Dave **WISELMAN**, et al., Plaintiffs,

v.

**OPPENHEIMER & CO.,
INC.,** Defendant.

No. 91–1094–Civ–J–20.

United States District Court,
M.D. Florida,
Jacksonville Division.

Oct. 27, 1993.

Michael Dennis Whalen, Bedell, Dittmar, DeVault & Pillans, P.A., Jacksonville, FL, Geena Cohen, Ronald A. Schy, Cary N. Goldberg, Beigel & Sandler, Ltd., Chicago, IL, for plaintiffs.

Bruce J. Berman, Wett, Gotshal & Manges, Miami, FL, Dennis J. Block, Weil, Gotsh-

**1400**

al & Manges, New York City, for Oppen-
heimer & Co.

William C. Humphreys, Jr., Michael P.
Kenny, Jennifer L. Gimer, Alston & Bird,
Atlanta, GA, Michael J. Dewberry, Rogers,
Towers, Bailey, Jones & Gay, Jacksonville,
FL, for Coopers & Lybrand.

### OPINION and ORDER

SCHLESINGER, District Judge.

Before the Court is Defendant's Motion for
Summary Judgment (Doc. No. 106, filed Sep-
tember 24, 1993). Plaintiffs filed a response
in opposition on October 19, 1993 (Doc. No.
128). Defendant's Motion for Leave to File
Oversized Reply Memorandum (Doc. No.
133, filed October 25, 1993) is GRANTED,
and the Clerk shall docket that pleading
prior to this Order.

Previously, Oppenheimer moved to dismiss
the instant RICO count for failure to state a
claim upon which relief could be granted.
The Court denied that Motion, largely be-
cause it could not derive from the Amended
Complaint a sufficient understanding of the
extent of Oppenheimer's role in the "enter-
prise" upon which the RICO claim is found-
ed. *See* Order of April 21, 1993 (Doc. No.
66). The Court added, however, that in the
"future context of a motion for summary
judgment," the Court would not be bound by
the allegations of the Amended Complaint,
but could avail itself of the entire record as
developed through subsequent discovery.
Despite the overt, gratuitous hostility be-
tween opposing counsel in this matter, exten-
sive discovery miraculously now has been
completed.

■ Summary judgment is appropriate
"if the pleadings, depositions, answers to in-
terrogatories and admissions on file, together
with the affidavits, if any, show that there is
no genuine issue as to any material fact and
that the moving party is entitled to judgment
as a matter of law." Fed.R.Civ.P. 56(c).
The moving party bears the initial burden of
showing the Court, by reference to materials
on file that there are no genuine issues of
material fact that should be decided at trial.
*Celotex Corp. v. Catrett,* 477 U.S. 317, 106
S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v.*

*Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.
1991). A moving party discharges its burden
on a motion for summary judgment by
"showing" or "pointing out" to the Court that
there is an absence of evidence to support
the nonmoving party's case. *Celotex,* 477
U.S. at 325, 106 S.Ct. at 2553. Rule 56
permits the moving party to discharge its
burden with or without supporting affidavits
and to move for summary judgment on the
case as a whole or on any claim. *Id.* When
a moving party has discharged its burden,
the nonmoving party must then "go beyond
the pleadings," and by its own affidavits, or
by "depositions, answers to interrogatories,
and admissions on file," designate specific
facts showing that there is a genuine issue
for trial. *Id.* at 324, 106 S.Ct. at 2553.

■ In determining whether the moving
party has met its burden of establishing that
there is no genuine issue as to any material
fact and that it is entitled to judgment as a
matter of law, the Court must draw inferenc-
es from the evidence in the light most favor-
able to the nonmovant, *Key West Harbour v.
City of Key West,* 987 F.2d 723, 726 (11th
Cir.1993), and resolve all reasonable doubts
in that party's favor. *Spence v. Zimmer-
man,* 873 F.2d 256, 257 (11th Cir.1989). The
nonmovant need not be given the benefit of
every inference, but only of every "reason-
able" inference. *Brown v. City of Clewiston,*
848 F.2d 1534, 1540 n. 12 (11th Cir.1988).
The Eleventh Circuit has explained the rea-
sonableness standard:

> In deciding whether an inference is rea-
> sonable, the Court must "cull the universe
> of possible inferences from the facts estab-
> lished by weighing each against the ab-
> stract standard of reasonableness." [cita-
> tion omitted]. The opposing party's infer-
> ences need not be more probable than
> those inferences in favor of the movant to
> create a factual dispute, so long as they
> reasonably may be drawn from the facts.
> When more than one inference reasonably
> can be drawn, it is for the trier of fact to
> determine the proper one.

*WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th
Cir.1988).

■ Thus, if a reasonable fact finder
evaluating the evidence could draw more

than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir.1988). It must be emphasized that the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported summary judgment motion. Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12.

Plaintiffs in the instant matter purchased investment units in a limited partnership called Wend Coast of Florida Limited Partnership ("the Partnership"), which was formed "to acquire and operate certain assets comprising of 52 existing Wendy's restaurants under franchise agreements." Amended Complaint at ¶ 10.[1] Defendant is a financial services firm, and served as the placement agent for the investment units, each of which consisted of a limited partnership and a debt security. These securities were offered by private placement, pursuant to a June 2, 1986 Private Placement Memorandum ("the PPM"). The Partnership subsequently filed a reorganization proceeding in the United States Bankruptcy Court for the Middle District of Florida.

Plaintiffs claim that the PPM misrepresented the Partnership's financial prospects, and allege three causes of action against Defendant: a violation of 18 U.S.C. § 1962(c) (federal "RICO" claim) (Count I) and state common law fraud and misrepresentation (Counts II and III).

■ The sufficiency of Count I turns entirely upon the extent of Defendant's role within the alleged "enterprise." In relevant part, the federal RICO statute states:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). However, to be liable under this section, a party must "participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young,* —— U.S. ——, ——, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993). Liability is not limited to "those with primary responsibility for the enterprise's affairs," but "*some* part in directing the enterprise's affairs is required." *Id.* at ——, 113 S.Ct. at 1170. The Court stated that this "operation or management test" is the proper method of making such determinations. *Id.*

To determine whether Defendant can be held liable under section 1962(c), and in order to rule on the instant Motion, the Court must answer two questions: (1) what was the "enterprise" the operation or management in which Defendant is alleged to have participated?, and (2) what was the extent, if any, of Defendant's participation?

■ To establish a RICO violation under section 1962(c) a plaintiff must demonstrate (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity that must include at least two racketeering acts. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). The statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associ-

---

1. In pleadings filed since the filing of the Amended Complaint, including Plaintiffs opposition to the instant Motion, Plaintiffs also refer to a partnership known as "Wendco," a deal syndicated through similar methods as the Wend Coast Partnership. However, the Amended Complaint, upon which Plaintiffs claims are based, makes absolutely no reference to "Wendco." Accordingly, and for the purpose ruling on this Motion, Plaintiffs' present references to this other alleged entity will be ignored.

ated in fact although not a legal entity." 18 U.S.C. § 1961(4). An enterprise is an entity existing for the purpose of "engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). RICO liability may attach when the association conducts "illegal activity." *United States v. Hewes*, 729 F.2d 1302, 1311 (11th Cir.1984), *cert. denied sub nom. Caldwell v. United States*, 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985).

The Court initially was somewhat perplexed as to the precise nature of the alleged instant enterprise. *See* Order of April 21, 1993 (Doc. No. 66) at 4-5, 7, and the parties have done little to clarify this matter. Again, the Amended Complaint states:

> Wendy's including its directors, officers, employees and franchisees, including the Principal, BSF Foods, Inc., J. Michael Bodner, R. Wayne Lewis, Howard E. Sachs, constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4) (the "Wendy's Enterprise").

Amended Complaint at ¶ 45. In moving for summary judgment, Defendants state that Plaintiffs have not produced evidence indicating the existence of any criminal enterprise. Defendant does allude to the above-cited section of the Amended Complaint, but adds little or no other elaboration on the nature of the enterprise.

Plaintiffs, in opposing the Motion, refer to this portion of the Amended Complaint, yet then state—in near contradictory terms—that "Wendy's is not the enterprise at issue here." Plaintiffs' Memorandum of Law in Opposition at 50. Plaintiffs argue that "because Oppenheimer does not even correctly address the enterprise alleged (and which will be proved) in this case, its motion should be denied outright." *Id.* at 47. Nevertheless, by virtue of their contrary statements, it would appear to be *Plaintiffs* who have not correctly addressed the identity and nature of the alleged enterprise. If, after two years of discovery and eight volumes in a case file, Plaintiffs cannot produce sufficient evidence to the Court of that which is an essential element of their legal claim against Defendant—the existence and approximate contours of an enterprise—the Court is some-

what dubious as to whether this can be achieved at trial. This would appear particularly true in light of the fact that Plaintiffs must prove not merely the existence of an "enterprise," but rather a *criminal* enterprise. Other than Plaintiffs' highly conclusory allegations, the record is devoid of any evidence even *tending* to demonstrate illegality or attempts at conducting illegal acts.

Even assuming that the "enterprise" in issue was either "Wendy's" or "the Partnership" or *both*, there remains one other issue dispositive to the resolution of this Motion: what was the extent of Oppenheimer's role in the enterprise? Construing Oppenheimer's activity even in a light most favorable to Plaintiffs (even accepting as true their version of Oppenheimer's actions), and considering highly relevant recent caselaw, it is clear that the acts of Oppenheimer were not sufficient to render it subject to liability under RICO's section 1962(c).

In *Reves*, an accounting firm prepared audit reports for a farmers' cooperative, yet knowingly failed to inform the cooperative that the reports were based on the cooperative's investment in a gasohol plant, rather than the plant's fair market value. —— U.S. at ——, 113 S.Ct. at 1168. Because its assets were overinflated, the cooperative's records revealed a far less accurate picture of its poor financial health and de facto insolvency. The cooperative went bankrupt and its trustees sued the accounting firm. Nevertheless, the Supreme Court held that the accounting firm's failure to notify the cooperative that the plant should have been given its fair market value did not constitute participation in the operation or management of the cooperative itself. *Id.* at ——, 113 S.Ct. at 1174. Accordingly, section 1962(c) liability could not be imposed upon the accounting firm. *Id.* In limiting the reach of liability under this provision, the Court stated:

> [I]t is clear that Congress did not intend to extend RICO liability under § 1962(c) beyond those who participate in the operation or management of an enterprise through a pattern of racketeering activity.

*Id.* at ——, 113 S.Ct. at 1172.

Although not binding on this Court, several subsequent federal decisions—even those

finding liability under the *Reves* standard— are highly instructive and tend to support a proposition that entities and individuals outside of an enterprise [2] should not be held liable under section 1962(c) absent some showing of operation or management of the enterprise, or reliable indicia of fraud, coercion or illegality. *See, e.g., Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1542 (10th Cir.1993) (sufficient evidence supported jury finding that officers of parent company controlled day-to-day operations of affiliate reseller of automobile notes, such that officers participated with affiliate in conduct of RICO enterprise); *University of Maryland v. Peat, Marwick, Main*, 996 F.2d 1534, 1539–40 (3d Cir.1993) (accounting firm does not open itself to federal racketeering liability where it merely performs "generic financial and related services" for insurance company whose affairs accounting firm was not alleged to have operated or managed); *Nolte v. Pearson*, 994 F.2d 1311, 1317 (8th Cir.1993) (law firm prepared documents and opinion letters for music leasing company so that company could provide prospective investors information—directed verdict for law firm upheld because record devoid of evidence of direct participation in operation or management of enterprise company); *Amalgamated Bank of New York v. Marsh*, 823 F.Supp. 209, 220 (S.D.N.Y.1993) (corporation controlled by bank employee did not participate in operation or management of bank merely by employee diverting funds into corporation's account in same bank); *Morin v. Trupin*, 823 F.Supp. 201, 208 (S.D.N.Y.1993) (alleged "employee" instead was independent contractor who maintained own real estate business distinct from co-defendant's organization, was "an outside defendant with no official position in the organization," and thus, under *Reves*, was not subject to RICO liability); *Sassoon v. Altgelt, 777, Inc.*, 822 F.Supp. 1303, 1307 (N.D.Ill.1993) (under *Reves*, conduct of providing legal services to general partners and limited partnership—e.g., drafting of investment offering and letters—not sufficient to support liability under section 1962(c)); *Brown v. LaSalle Northwest Nat.*

*Bank*, 820 F.Supp. 1078, 1082 (N.D.Ill.1993) (bank had sufficient control over fraudulent scheme that omitted required provisions in loan documents so that *Reves* standard satisfied); *Gilmore v. Berg*, 820 F.Supp. 179, 183 (D.N.J.1993) (lawyers' preparation of allegedly misleading opinion and forecast letters "merely constituted the rendition of professional services," rather than direction of affairs of any of the corporate entities involved in syndication).

Plaintiffs correctly note that none of the cases cited by Defendant characterized a broker selling securities as an "outsider." In fact, none of the other cases cited above involved brokers *or* investment bankers. The Court might accept Plaintiffs' assertion that Defendant's services were "essential" to accomplishing the sale of the instant securities, but it does not follow that Defendant was participating in the operation or management of the enterprise on whose behalf the securities were sold. Indeed, while Plaintiffs decry Defendants' self-characterization as that of an "outsider," this appears to the Court to be a rather fitting description. In its opposition to the instant Motion, Plaintiffs, in telling fashion, characterize Defendant's activity as follows:

> ... *Oppenheimer was to render*—and was certainly paid substantial sums for—*supposed "financial advisory services"* and for "placing certain senior debt of the partnership." Thus, Oppenheimer not only sold the limited partnership interests to plaintiffs, but Oppenheimer acted as a so-called *advisor* and actually participated in consummating the deal by "finding" financing for the Partnership. Indeed, [Jerome H.] Turk, [a member of Defendant's Corporate Finance Department who worked on this deal] admitted that Oppenheimer "really" had two *clients*, the syndicator and the finance institution.

Plaintiffs' Memorandum of Law in Opposition (Doc. No. 128) at 53 (emphasis supplied). *Reves*, however, strongly intimates that the entities most amenable to RICO liability are those existing *within* an enterprise, not out-

---

2. This category includes, but certainly is not limited to, lawyers, accountants, bankers, and other service professionals.

side entities *serving* an enterprise, i.e., in a professional capacity. In this vein, the Supreme Court noted that liability is not to be reserved merely for those in upper management, because an enterprise also can be "operated" by "lower-rung participants in the enterprise who are under the direction of upper management." —— U.S. at ——, 113 S.Ct. at 1173. Yet, in stating that "others 'associated with' the enterprise" could be liable, the Court offered no such scenarios other than "bribery." *Id.*

The Court finds that the "Enterprise"—be it "Wendy's" or the "Partnership" or both—was Defendant's *client*, on whose behalf Defendant acted and no doubt expended a great amount of time. However, to say that "the rendition of professional services," *Gilmore*, 820 F.Supp. at 182, is equivalent to "operation" or "management" of the served entity is to turn the concept of representation on its head: clearly, the imparting of "advice" and/or "financial expertise" does not per se equal "operation or management." To borrow from *Gilmore*, 820 F.Supp. at 183, and contrary to Plaintiffs' view, the acts performed by Defendant in this case amounted to "common professional services typically rendered" by a professional, in this instance a private investment firm. Defendant did not participate in the operation or management of Wendy's or the Partnership and, therefore, did not "conduct or participate ... in the conduct" of these entities' affairs. 18 U.S.C. § 1962(c). *See also Reves*, —— U.S. at ——, 113 S.Ct. at 1173. Thus, as a matter of law, Defendant's role in the alleged transactions was and is insufficient to bring its actions within the realm of liability available through section 1962(c).

Accordingly, summary judgment on behalf of Defendant is warranted as to Count I (the RICO count) of the Amended Complaint, and Defendant's Motion (Doc. No. 106) is GRANTED to this extent.

The state claims set forth against Defendant in Counts II and III may be entertained by this Court *only* under the "supplemental jurisdiction" statute in the United States Code. Since the Court is granting summary judgment on behalf of Defendants as to the only claim over which

the Court has original jurisdiction, the Court declines to exercise jurisdiction over either of the state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, Counts II and III are DISMISSED WITHOUT PREJUDICE.

Additionally, the following Motions hereby are MOOTED: Plaintiffs' Motion to Strike All of Defendant's Expert Discovery Responses and to Bar Defendant Expert Testimony at Trial (Doc. No. 131, filed October 22, 1993) and Defendant's Motion to Adjourn Trial Date (Doc. No. 133, filed October 25, 1993).

The Clerk is directed to: (1) enter judgment for Defendant with respect to Count I; (2) tax costs accordingly; and (3) close the file.

DONE AND ORDERED.